IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| David Richard Walker, Jr., ) | Case No. 8:14-cv-00996-JMC-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| Dr. William Miles and Correct Care ) | |
| Solutions, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on Defendants' motion for summary judgment. [Doc. 48.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983, and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, brings this action against Dr. William Miles and Correct Care Solutions (collectively, "Defendants"). [Doc. 1.] Defendants filed their motion for summary judgment on July 25, 2014. [Doc. 48.] By Order filed the same day pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 49.] Plaintiff filed a document, which the Clerk of Court construed as a response in opposition,[1] on August 6, 2014, and another response on August 11, 2014.

---

[1] The Clerk of Court also construed this filing, which Plaintiff titles "Motion for Immposition for Summary Judgment and Plaintiff Response to Preliminary Injunction," as an objection to a pending Report and Recommendation. [Doc. 59.]

1

[Docs. 60, 65.] Defendants filed a reply on August 18, 2014. [Doc. 68.] The motion is ripe for review.

## BACKGROUND

Plaintiff, who is a pretrial detainee in the Lexington County Detention Center ("LCDC"), filed this § 1983 action alleging deliberate indifference to his serious medical needs. [Doc. 1.] In the Complaint, Plaintiff alleges he has been denied proper medical care from the time he was detained on March 4, 2013. [Doc. 1 at 3.] He claims he requested medical care on approximately forty different occasions and was seen only four times. [*Id.*] When he was seen by medical staff, Plaintiff asserts the visits lasted less than five minutes. [*Id.*] Plaintiff states he is experiencing pain and suffering as a result of several medical conditions that require monitoring, including deep vein thrombosis and blood clots in his lungs. [Doc. 1 at 3–4.] Plaintiff asks the Court to grant him a declaration that the acts and omission violate his rights and preliminary and permanent injunctions. [Doc. 1 at 5.] He also requests $30,000 in compensatory damages, $700 per day in compensatory damages for pain and suffering and mental anguish, attorneys fees and costs, a jury trial, and any other relief the Court deems equitable. [*Id.*]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard

2

than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments.  This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly

4

be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must

demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**DISCUSSION**

Defendants contend, among other arguments, the case should be dismissed for failure to exhaust administrative remedies. [Doc. 48 at 7–10 .] The Court agrees.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the United States Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; an inmate must comply with his prison's grievance procedure to exhaust his administrative

remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process). *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking

summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

Plaintiff asserts he filed three separate grievances complaining of improper medical care. [Doc. 1 at 2.] However, he is unable to produce the grievances and has no other evidence that he followed the grievance procedure of LCDC. Defendants have submitted the affidavit of Melissa Lyons ("Lyons"), the grievance manager for LCDC, to establish Plaintiff did not follow the proper grievance procedures. [Doc. 48-1.] The procedures require an inmate to fill out an "Inmate Request" form within three days after the issue arises. [*Id.* at 1, 5.] An officer then reads the grievance and either handles it directly, or, if he cannot, forwards the grievance to the Programs Coordinator or Administrative Assistant. [*Id.* at 5–6.] The Program Coordinator/Administrative Assistant stamps the grievance, forwards it to the appropriate person, and keeps an electronic file on the grievance. [*Id.* at 6] The Bureau Commander or designee is responsible for investigating the claim and must issue a written response within ten working days of the date the grievance was received. [*Id.*] If, upon the response, the inmate is not satisfied, the inmate may file a written appeal to the Chief Deputy/Assistant Sheriff within 48 hours of his receipt of the response. [*Id.*] Lyons states the grievance procedure is in the inmate rules, which are given to each inmate when they are booked in and are posted in every housing unit. [*Id.* ¶ 5.]

Between October 14, 2013 and March 21, 2014, Lyons reports she received one grievance, dated March 10, 2014, referring to Plaintiff's medical care. [*Id.* ¶ 8.] On March 10, 2014, Lyons answered the grievance by alerting Plaintiff she was referring the matter

9

to medical for a response. [*Id.*; Doc. 48-1 at 12.] Plaintiff appealed Lyons's answer but did not wait for a response from medical. [Doc. 48-1 at 12.] Medical responded to the grievance on March 18, 2014, within the ten days provided by LCDC's grievance procedure. [Doc. 48-1 at 13.] Plaintiff failed to appeal medical's response to the grievance. [ *Id.* ¶ 8.] This does not constitute "proper exhaustion" under *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). Plaintiff has failed to show that he properly exhausted his administrative remedies by appealing any grievance related to his medical care within ten days after receipt of the notice of decision, as required by the LCDC grievance procedure. Accordingly, Defendants' motion for summary judgment should be granted based on Plaintiff's failure to exhaust administrative remedies.[2]

---

[2] Even if the Court finds Plaintiff exhausted his administrative remedies, summary judgment would be proper based on the merits of the case. Plaintiff is unable to prove Defendants failed to give him adequate medical care. On the contrary, Defendants have submitted an expert's report by Dr. Oliver Harden based on over one thousand pages of Plaintiff's medical records detailing the care Plaintiff received. [Doc. 45-1.] Dr. Harden opined that "the medical records establish that Dr. Miles and the Correct Care Solutions medical staff at [LCDC] have provided medical care to Mr. Walker for all of his alleged medical conditions. The records show observations, testing, care, and treatment from March 4,2013 through the present." [Doc. 45-1 at 2.] Dr. Harden details the medical care rendered by Defendants including lab tests, an EKG, x-rays, and the administration of numerous medications. [*Id.*]. In the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir.1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir.1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g., Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at \*2 (D.S.C. Mar.21, 2011) (citing *Jackson*, 846 F.2d at 817). Accordingly, the record demonstrates Dr. Miles and the Correct Care Solutions medical staff at LCDC have provided medical care and treatment to Plaintiff, and summary judgment is appropriate.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

                                              s/ Jacquelyn D. Austin
                                              United States Magistrate Judge

August 25, 2014
Greenville, South Carolina